UNITED STATES, Appellee

v

CARY D. OMPAD, Airman Third Class,
U. S. Air Force, Appellant

15 USCMA 593, 36 CMR 91

No. 18,859

January 21, 1966

*Lieutenant Colonel Joseph B. McMullin* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Major William F. Rutherford* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

The accused pleaded guilty before a general court-martial to two specifications of assault with a knife upon Airman Third Class Donald W. Lytle, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. Both offenses were alleged to have occurred the night before Christmas 1964. The court-martial returned findings of guilty, on the accused's plea and two stipulations of expected tes-

timony. It sentenced the accused to a bad-conduct discharge, confinement at hard labor for one year, and accessory penalties. Intermediate authorities affirmed the findings of guilty and the sentence.

Appellate defense counsel contend the law officer's instruction on the maximum legal sentence was erroneous and prejudicial in that the two assaults were part of a single act and, therefore, not separately punishable.[1] The same contention was made before the board of review. The board of review concluded there was "separateness as to times, places, intents and impulses in the two assaults." It went on to indicate that even "had . . . [it] treated the offenses as multiplicious, . . . [it] would still have deemed the adjudged sentence appropriate."

A reassessment of the sentence may eliminate the prejudice the accused claims resulted from an alleged error. United States v Weaver, 13 USCMA 147, 32 CMR 147; United States v Eschmann, 11 USCMA 64, 28 CMR 288. It is apparent, however, that the board of review did not attempt to cure the alleged misstatement as to the maximum punishment by reassessment of the sentence. It merely suggested the result it might have reached had it actually reassessed the sentence in light of the alleged error. This part of the board of review's decision is "strictly hypothetical." United States v Harris, 10 USCMA 69, 70, 27 CMR 143. Consequently, the board of review's affirmance must stand or fall on whether the offenses are separate for sentence purposes.

One of the stipulations recites the expected testimony of the victim, Airman Donald W. Lytle. It indicates that Lytle attempted to pass the accused and a companion, who were standing on the sidewalk near Lytle's barracks. The accused charged Lytle with "being prejudiced" and assaulted

him with a knife. Lytle was cut in the stomach. Just then, "the headlights from a vehicle lighted up" the area, and the accused attempted to hide the knife "from view." Lytle turned away and went to his barracks. As soon as he entered the front door, he "stopped to examine the cut"; he noticed it was about five to six inches long. The stipulation continues as follows:

". . . I turned around and noticed Airman Ompad and Airman Pritchett coming at me again. Airman Ompad pushed me up against the wall and held me against the wall . . . [and] threatened me by waving the same knife that he had used previously to cause my wound. . . ."

The second stipulation deals with the expected testimony of Airman William S. Bacon. According to this stipulation, Bacon came upon the threesome while they were still in the street. He saw Lytle "holding his hand on his stomach." Nothing is said about the interruption caused by the illumination from the headlights of the approaching vehicle. The change of locale from sidewalk to barracks is described as follows:

". . . Pritchett and Ompad were arguing with him, and Ompad was holding a knife. Airman Lytle turned and returned to his barracks, *and shortly thereafter* as I was standing there, I noticed Airman Ompad and Airman Pritchett follow him back. When I arrived back at the same barracks, I noticed that Airman Ompad was holding Airman Lytle up against the wall and waving a knife at his throat." [Emphasis supplied.]

Airman Bacon's stipulated testimony indicates that a clear-cut interval of time elapsed between Lytle's departure from the scene and the accused's pursuit. The distance between the barracks and the place of initial assault

---

[1] It is not contended that the accused's plea of guilty was improvident because he was misadvised of, or misunderstood, the correct maximum punishment to which he was subject. Cf. United States v Kleinhans, 14 USCMA 496, 34 CMR 276; United States v Hamill, 8 USCMA 464, 24 CMR 274.

is not clearly defined, but assuming it is very short, the important fact is that the accused went into the barracks to find Lytle. The definite time lapse between Lytle's departure and the accused's pursuit, and the fact that the accused had to seek out Lytle in his own barracks, compellingly indicate the second assault was a new and separate act, not the continuation of a momentarily interrupted act. See United States v Kleinhans, 14 USCMA 496, 34 CMR 276. Apparently, at trial, defense counsel interpreted the accused's conduct in the same light. Without objection or contrary argument, he allowed trial counsel to contend for a severe sentence on the ground the accused had committed "in fact two offenses and not merely one." We are satisfied there is ample evidence to support the conclusion the two offenses were separate.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.