UNITED STATES

v.

Staff Sergeant Randolph J. RIDGEWAY, FR 520–68–1478 United States Air Force.

ACM 24445.

U.S. Air Force Court of Military Review.

Sentence Adjudged 27 April 1984.

Decided 30 Nov. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Robert S. Schwartz.

Before RAICHLE, CANELLOS and CARPARELLI, Appellate Military Judges.

## DECISION

CARPARELLI, Judge:

The accused pled guilty and was convicted of divers larcenies totaling fifteen hundred dollars and of altering public records on divers occasions during the same period. We specified the issue of whether the military judge erred when he treated the two specifications as separate for findings and sentence.

The accused was an assistant shift supervisor for the Rhein-Main Air Base Air Passenger Terminal. At times he was responsible for computerized and manual passenger ticket and baggage check-in operations. As part of those responsibilities the accused checked baggage and collected monies for excess baggage and for meals. He also obtained a computer product which reflected the total amount of excess baggage fees collected.

In July 1983 an audit revealed a shortage of one hundred eighty dollars. The Air Force Office of Special Investigations (AFOSI) established video surveillance. During the surveillance, agents saw the accused removing currency from the top of the Fund Handler's desk and placing the

money in his pocket. They then saw him tear up passenger boarding passes (MAC Forms 148) and throw the pieces in a wastebasket. The accused was then apprehended. Upon questioning he confessed to stealing about fifteen hundred dollars from the excess baggage fund between July and September 1983. He also explained that, at the time of each theft, he altered computer data as well as passenger and baggage processing forms in an effort to avoid detection.

## A

### Multiplicity: Constitutional Basis

Confronted with the many tests of multiplicity, Judge Cook recently said, "This is not justice; this is chaos!" *United States v. Baker*, 14 M.J. 361, 372 (C.M.A.1983), (Cook, J., dissenting). Not only are there many tests but there is little understanding of how the tests relate to one another and, more importantly, how they relate to the underlying Constitutional principles which mandate the effort in the first place.

The issue of whether an accused has been convicted and punished for two separate offenses or been twice convicted and punished for the same offense derives from the Fifth Amendment protection against double jeopardy and the principle of separation of powers. Prosecutors have the responsibility of reviewing allegations of criminal conduct and drafting charges which reflect the crimes to be proved. Such prosecutorial decisions, however, are not determinative of the courts' authority to impose convictions and punishment for every offense charged.

The Supreme Court has held that the Fifth Amendment protects an accused from being convicted or punished twice for the "same" offense.[1] When resolving the issue of whether multiple charges refer to the same offense courts must begin by recognizing that their authority to convict and punish an accused for his conduct derives from the legislature's criminal statute, not from discretionary executive branch decisions. Herein lies the separation of powers facet of the issue.

An inherent aspect of the legislature's power to criminalize conduct is its unique power to define the conduct it wishes to condemn and to establish the maximum punishments which can be imposed. As to any offensive conduct which can, or commonly does, occur in a closely connected series of acts, the legislature has the option of consolidating it into one punishable offense or separately condemning and punishing each act within the connected series of acts. *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253, 71 L.Ed. 505, 510 (1927). The essence of multiplicity analysis, therefore, is to determine whether the legislature intended to authorize separate convictions and punishments for distinct aspects of the conduct alleged or intended to authorize only one conviction and one unit of punishment for all aspects of that conduct.[2]

## B

### Actual Legislative Intent

When ascertaining legislative intent, courts must first look for actual legislative intent. Such intent may be expressed or implied by the legislature in the text of the applicable criminal statute. Legislatures, however, cannot anticipate every possible combination of criminal acts, nor do they attempt to do so. Expressed or implied legislative intent as to the separateness of criminal acts is therefore rare.

Absent expressed or implied legislative intent, courts have sometimes inferred the

---

1. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Fifth Amendment provides, in pertinent part: "No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb ...." U.S. Const. amend. V.

2. Legislative intent to authorize separate convictions and the intent to authorize separate punishment are distinct matters. When resolving multiplicity issues in the context of findings, courts seek to identify the former intent. When resolving issues in the context of sentencing, courts must identify the latter intent.

legislature's intent as to separateness on the basis of reasoned analysis of the statute in question. Judicial inferences of this sort are also rare. *See, e.g., United States v. Washington,* 1 M.J. 473 (C.M.A.1976), (the Court noted the absence of statutory language negating the "long established" principle that a substantive offense and conspiracy to commit that offense may be separately charged and punished); *United States v. Parker,* 17 U.S.C.M.A. 545, 38 C.M.R. 343 (1968), (the Court inferred legislative intent to separately punish temporaneous robberies of more than one victim); and *Barringer v. United States,* 399 F.2d 557 (D.C.Cir.1968), *cert. denied* 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969). In *United States v. Baker,* 14 M.J. 361, 367, (C.M.A.1983), the Court of Military Appeals noted that the courts have inferred legislative intent as to separateness regarding: (1) offenses which, when reviewed in light of apparent legislative objectives, require inconsistent findings of fact;[3] (2) offenses which are indivisible as a matter of law;[4] (3) offenses which are, inherently, continuing courses of conduct;[5] and (4) offenses which, under the statutory scheme are apparently intended to stand in the relationship of greater and lesser.[6]

When actual legislative intent cannot be discerned on the basis of expressed intent, implication, or reasoned inference, courts must use established rules of construction to provide an objective basis from which consistent and predictable results can be derived in divers cases. In *Baker, supra,* the Court of Military Appeals established the rule for constructively determining legislative intent on the issue of multiple convictions and discussed existing rules for constructively determining legislative intent as to punishment.

## C

### Constructive Determination of Legislative Intent regarding Multiple Convictions

■ In *United States v. Baker, supra,* the Court of Military Appeals noted that under Article 79 of the Uniform Code of Military Justice, 10 U.S.C.A. § 879, an accused can be convicted of an "uncharged" offense if it constitutes a lesser included offense of a charged offense. Because this is so, a lesser included offense cannot be said to be separate from its principle offense. An accused, therefore, cannot properly be convicted of both a principle offense and one which is included within it because to do so would be to convict him twice of a single offense. The Court stated a clear test for determining whether an offense is included within another. It stated:

> Assuming both offenses arise out of one transaction, one offense may be a lesser-included offense of another offense in two situations: First, where one offense contains only elements of, but not all the elements of the other offense; second, where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial.

*Baker,* 14 M.J. at 368. This rule should be viewed as a constructive test of legislative intent in regard to the issue of multiple convictions. Because actual legislative in-

---

**3.** *Baker,* 14 M.J. at 367, citing *United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982).

**4.** *Id.,* citing *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). *See also United States v. Rosen,* 9 U.S.C.M.A. 175, 25 C.M.R. 437 (1958), (Latimer, J., concurring in the result); *United States v. Redenius,* 4 U.S.C.M.A. 161, 15 C.M.R. 161 (1954) (despite a strained analysis, the result in this case amounts to a finding that desertion is an indivisible offense); and *United States v. Murphy,* 18 U.S.C.M.A. 571, 40 C.M.R. 283 (1969) (The Court found wrongful disposition of government property and larceny of the same property to be multiplicious. Under the analytic framework described in *Baker,* this case could have been decided on the theory of indivisible offenses or under the *Baker* rule of construction regarding lesser included offenses, *infra*).

**5.** *Id.,* citing *Ex parte Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887).

**6.** *Id.,* citing *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *See also Prince,* 352 U.S. at 327, 77 S.Ct. at 406.

tent can seldom be identified, the majority of decisions regarding multiple convictions are made on the basis of this rule.

Applying this analysis to determine whether separate convictions can be imposed for the specifications before us, we first find no basis for determining actual legislative intent.[7] We, therefore, turn to the *Baker* rule of construction to determine if either offense is included in the other. We must first determine whether the offenses arose from the same act or transaction. As they were closely connected in time and place, we find that they did. *United States v. Ompad,* 15 U.S.C.M.A. 593, 36 C.M.R. 91 (1966); *cf. United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); and *United States v. Payne,* 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961). Because the offenses arose from the same transaction we must continue our analysis to resolve the issue of legislative intent.

We next look at the specifications to determine the elements which must be proved. The specification of the first charge alleges, in pertinent part, that the accused stole currency of a value of about fifteen hundred dollars at divers times during the period 12 July 1983 to 29 September 1983. The specification of the second charge alleges that, during the same period, he willfully and unlawfully altered public records, to wit: information contained in the Rhein-Main Air Base passenger service computer concerning excess baggage fees paid by passengers departing Rhein-Main Air Base; and Department of Defense Forms 1482, Military Airlift Command Transportation Authorizations of passengers departing Rhein-Main Air Base.

■ We find that each of these specifications required proof of an element not required to prove the other. A more probing analysis of the elements in accordance with the second aspect of the *Baker* rule of construction reveals that the factual allegations contained in each specification do not fairly embrace the elements of the other specification. That is to say that, although the evidence at trial established both offenses, had the prosecution only charged the larceny, the military judge could not properly have instructed on the offense of altering public records as a lesser included offense. This is so because the larceny specification, as drafted in this case, did not provide sufficient notice to the accused that he must also be prepared to defend against the elements of altering public records. Similarly, had the prosecution only charged the altering of public records, such charge, as drafted in this case, would not have given notice of the need to defend against larceny. *See* para. 158, M.C.M., 1969 (Rev.).

We therefore find that the offenses were not multiplicious for findings.

### D

### *Legislative Intent as to Multiple Punishment*

■ As to the question of multiple punishment we note that the legislature normally establishes the maximum punishment which may be imposed for a given crime. The legislature is thus free to permit or prohibit separate punishments for offenses arising from a single act or transaction. *Albrecht v. United States,* 273 U.S. at 11, 47 S.Ct. at 253. As to most offenses in the U.C.M.J., however, Congress has simply

---

7. A superficial attempt to infer actual legislative intent in this case might suggest that the accused was engaged in a "continuous course of conduct" and that therefore his offenses should therefore be found to be multiplicious. Such analysis, however, would be erroneous. The question is not whether the accused committed discrete crimes in a continuing manner but whether the legislature has proscribed conduct which, once begun, inherently continues until some action is taken to terminate it. To illustrate this concept the Court of Military Appeals cited *Ex Parte* *Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), a case in which the accused was convicted, in three separate trials in late 1885 and early 1886, of wrongfully cohabiting with seven "wives" during various years. The first trial referred to 1885, the second to 1884, and the third to 1883. The Supreme Court held that the accused could not be separately convicted for each year because wrongful cohabitation "is inherently a continuous offense having duration, and not consisting of an isolated act." *Id.* at 120 U.S. 281, 7 S.Ct. 559.

stated that a convicted person may be punished "as a Court-Martial may direct." *See* U.C.M.J. Articles 78–134, 10 U.S.C. §§ 878–934. Specific limitations on punishment have been established, not by the legislature, but by the President in the Manual for Courts-Martial. In recognition of this unique situation, the Court of Military Appeals has also turned to the Manual to determine the President's intent regarding separate punishments.[8]

If multiple specifications remain before a trial court after it has found the specifications separate for findings, the court must next determine if the legislature intended separate punishments. Again this requires reference first to actual legislative intent. If such intent cannot be discerned courts must resort to a uniform rule of construction. Much of the confusion regarding sentencing multiplicity has resulted from misunderstanding of the rule announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932), its proper role in the resolution of multiplicity issues, and a subtle revision of that rule in the 1951 Manual for Courts-Martial.

The *Blockburger* rule states:

[W]here the same act or transaction *constitutes a violation of two distinct statutory provisions*, the test to be applied to determine whether there are two offenses or only one is whether *each provision* requires proof of an additional fact which the other does not. [Emphasis added.]

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. It is a rule of construction and, as such, can only be properly used when there is no clear indication of a contrary legislative intent. *Albernaz v. United States*,

450 U.S. 333, 341, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981).

The drafters of the 1951 Manual for Courts-Martial intended to incorporate this standard into paragraph 76a(8) of the 1951 Manual. *Legal and Legislative Basis, Manual for Courts-Martial, United States*, 1951, at 78. In the process, however, they deleted the phrase pertaining to violations of "distinct statutory provisions" and thus created a test based solely on "separate elements."[9] Doing so, unfortunately, obscured the inherent rationale of the *Blockburger* rule and sowed some seeds of confusion.

■ The rationale of the *Blockburger* rule is plain. When there are distinct statutory provisions and distinct requirements of proof, and actual legislative intent is not otherwise evident, courts can reasonably presume that the legislature intended to create separate offenses which may be separately punished. *Albernaz v. United States*, 450 U.S. at 340, 101 S.Ct. at 1142.

The *Blockburger* rule, however, does not apply to situations in which multiple specifications allege violation of the *same* statutory provision. The rule recited in paragraph 76a(8) of the 1951 Manual (and later included in the 1969 and 1984 Manuals) attempts to do so by omitting the phrase referring to separate statutory provisions. When applied, however, the M.C.M. rule sometimes leads to erroneous results.[10] *See, e.g., United States v. Johnson*, 5 U.S. C.M.A. 297, 17 C.M.R. 297; *Redenius, supra*. To avoid obviously erroneous results, the Court of Military Appeals developed two auxiliary rules to explain and refine

---

8. The President has expressed his intent regarding the separateness of punishment as to conspiracy and its correlative substantive offense. Para. 160, M.C.M., 1969 (Rev.). Congress has not stated a contrary intent, nor have the courts inferred such a contrary legislative intent. As a result, conspiracy and its substantive offense have been recognized as separate for both findings and punishment. *United States v. Washington*, 1 M.J. 473 (C.M.A.1976).

9. Rule for Courts-Martial 1003(c)(1)(C), M.C.M., 1984, retains this formulation of the test.

10. Assume, for example, an accused hit a victim in the face, then kicked his leg, and finally twisted his arm. If each of these acts was charged in a separate specification, strict application of the Manual's separate elements test would suggest that the acts constituted separate offenses.

the application of the *Blockburger* and M.C.M. rules of construction.[11]

■ The first auxiliary rule requires the analysis of societal norms or social standards. This rule reinforces the underlying rationale of the *Blockburger* rule and enables courts to apply that rationale to multiple specifications arising under the same statutory provision. It recognizes that the presumption that separate elements indicate separate offenses should only arise when the separate elements reflect statutory protection of distinct societal interests and not when they merely reflect discretionary drafting decisions by prosecutors.[12] *See United States v. Beene,* 4 U.S.C.M.A. 177, 179–180, 15 C.M.R. 177, 179–180 (1954).

The second auxiliary rule, single impulse analysis, was first used in larceny cases to avoid improper increases in the maximum punishment which could result from prosecution drafting decisions.[13] *See, e.g., United States v. Hall,* 6 U.S.C.M.A. 562, 20 C.M.R. 278 (1955); *United States v. Taylor,* 6 U.S.C.M.A. 289, 20 C.M.R. 5, (1955); *United States v. Stribling,* 5 U.S.C.M.A. 531, 18 C.M.R. 155 (1955); *United States v. Florence,* 1 U.S.C.M.A. 620, 5 C.M.R. 48 (1952). Rather than allow erroneous results in such cases the Court of Military Appeals has referred to common law principles and the Manual for Courts-Martial and applied single impulse analysis to ensure that such drafting does not control resolution of the issue. *See, e.g., Florence,* 5 C.M.R. at 54 (1952), citing Wharton, Criminal Law, 12th ed. Vol. 2, § 1171, page 1489, and The Manual for Courts-Martial, United States Army, 1949, para. 180, at page 240. *But see United States v. Kleinhans,* 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964) (decided on the basis of single impulse analysis; today the Court could better decide this case by applying the *Baker* rule of construction and still reach the same result).

In *United States v. Baker,* 14 M.J. at 369–370, the Court of Military Appeals not only reaffirmed the validity of the *Blockburger* rule of construction but also reaffirmed the propriety of applying the correlative analyses just discussed. Courts should, however, be cautious when applying such secondary analyses because they are particularly susceptible to subjective applications and, if improperly applied, can undermine rather than support the proper operation of the principle rule of construction.[14]

11. In the 1969 Manual for Courts-Martial the President counseled caution regarding the effectiveness of the Manual's separate elements test and noted several tests which the Court of Military Appeals had applied since 1951. Para. 76a(5), M.C.M., 1969 (Rev.).

12. Separate specifications alleging simultaneous possession of multiple caches of drugs and, similarly, separate specifications alleging possession of different kinds of drugs, would appear to be separately punishable under the M.C.M. rule. Separate norms analysis, however, insulates that rule of construction against the effects of drafting decisions and leads to the conclusion that such specifications are multiplicious for punishment purposes. *See United States v. Griffin,* 8 M.J. 66, 70 (C.M.A.1979); *United States v. Mosely,* 1 M.J. 350 (C.M.A.1976); *United States v. Hughes,* 1 M.J. 346 (C.M.A.1976).

13. A prosecutor might, for example, combine two distinct eighty dollar larcenies into a single specification and apparently increase the maximum punishment from a bad conduct discharge and two years confinement to a dishonorable discharge and five years confinement. On the other hand, if the accused, in a single incident, stole four items each valued at eighty dollars, a prosecutor might draft two specifications, each alleging theft of two items of a total value of more than one hundred dollars, and thus apparently increase the maximum confinement from five years to ten years. Without single impulse analysis, strict application of the Manual's "separate elements" rule would not prevent such abuses.

14. *E.g.,* assume a prisoner illegally entered a prison armory, assaulted a guard, stole a weapon, escaped, and stole a car. Single impulse analysis could erroneously cause one to conclude that the offenses were not separately punishable because they were all motivated by a single impulse to escape. Such results would, without appropriate reference to legislative intent, enable offenders to freely commit additional crimes to support the success of their overall goals without increasing the punishment which could be imposed. *But see United States v. Weaver,* 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970); *United States v. Pearson,* 19 U.S.C.M.A. 379, 41 C.M.R. 379 (1970).

Turning to the case now before us we first note that, in accordance with our earlier analysis, neither conviction must be set aside as an included offense. Second, neither the legislature nor the President has expressed or implied an intent regarding separate punishment and there is nothing which leads us to a reasonable inference regarding such intent. We must therefore constructively determine the legislature's intent. On each of the divers occasions, both the larceny and the alteration of public records arose from a single transaction. *Burney, supra; Ompad, supra.* Applying the *Blockburger* rule of construction we find that the offenses constitute violations of Article 121 and Article 134, 10 U.S.C. §§ 921, 934, two distinct statutory provisions. The first provision requires proof of a wrongful taking with the intent to permanently appropriate or deprive another. The second provision requires proof that the accused willfully altered a public record to the prejudice of good order and discipline in the armed forces. Thus each provision requires proof of an additional fact not required to prove the other. Because neither offense is a lesser included offense of the other and the offenses arose under distinct statutory provisions, the *Blockburger* rule of construction operates properly regardless of how the charges have been drafted. Under these circumstances we can constructively conclude that the legislature intended that these offenses be separately punishable. No further analysis is necessary.

We note, however, that application of the M.C.M. paragraph 76a(5) "separate elements" rule of construction leads to the same result. Each specification requires proof of distinct elements. We also note that the application of this rule of construction has not been frustrated by artful drafting because when we apply separate norms/separate social standards analysis we find that the separate elements indeed reflect separate social interests and not merely quirks of drafting.

We do not apply single impulse analysis because, under the facts of this case, single impulse analysis would bear no discernable relationship to legislative intent.[15] *Cf. United States v. Harrison*, 4 M.J. 332 (C.M.A.1978).

We, therefore, find that the offenses are separate for both findings and punishment. The approved findings and sentence are correct in law and fact and, therefore, are

AFFIRMED.

RAICHLE, Senior Judge, and CANELLOS, Judge, concur.

---

**15.** In fact, such analysis would engulf us in the particularly subjective determination of whether the accused was acting under a single impulse to steal or one impulse to steal and a second to avoid detection.