UNITED STATES

v.

Airman First Class Richard A. SHEFFIELD, FR 140–58–2627, United States Air Force.
ACM 24678.

U.S. Air Force Court of Military Review.

29 Aug. 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Captain Bruce T. Brown, and Captain Ronald W. Schmidt, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., and Captain Teresa J. Stremel.

Before SESSOMS, CANELLOS and CARPARELLI, Appellate Military Judges.

## DECISION

CARPARELLI, Judge:

The convictions in this case arose from a traffic collision. The appellant was drunk and drove his car in the wrong direction on the Autobahn. He struck an on-coming motorcycle and killed both its riders. He was charged with two specifications of involuntary manslaughter, each naming one of the victims. Article 119, Uniform Code of Military Justice, 10 U.S.C. § 919. The appellant pled guilty to both specifications and was convicted. At trial he argued that the offenses were multiplicious for both findings and punishment purposes. The military judge disagreed and found the offenses separate for all purposes. Appellant now challenges the judge's ruling.

In its most fundamental terms, the issue is whether the appellant has been convicted and sentenced twice for the "same offense." U.S. Const. amend. V; see R.C.M. 907(b)(3)(B) and R.C.M. 1003(c)(1)(C). Because both specifications in this case arise from Article 119, our task is to determine whether the legislature intended Article 119 to authorize separate convictions and separate punishments for multiple deaths arising from a single act.

Article 119 does not expressly address this issue and our review of the statute and the legislative history has revealed no language implying the legislature's actual intent. Article 119, U.C.M.J.; Uniform Code of Military Justice: Hearings on S. 857 and H.R. 4080 before a Subcommittee of the Senate Committee on Armed Services, 81st Congress, 1st Sess. (1949); Hearings of H.R. 2498 before a Subcommittee of the House Committee on Armed Services, 81st Congress, 1st Sess. (1949); Senate Floor Debate, February 1, 1950, 96 Congressional Record, Pt. 1, 1292–1310, Amendment R. In the absence of expressed or implied statements of legislative intent, courts have, in some cases, deduced legislative intent from the structure of the statute, its evident purpose, and the nature of the of-

fense. See United States v. Baker, 14 M.J. 361, 367, n. 4 (C.M.A.1983) and cases cited therein. The Court of Military Appeals noted that such judicial inferences of legislative intent have, generally, fallen into four categories: (1) offenses requiring inconsistent findings of fact; (2) offenses which are indivisible as a matter of law; (3) offenses which are inherently courses of conduct; and (4) offenses which, under the statutory scheme, are apparently intended by the legislature to stand in the relationship of greater and lesser. The offenses before us, however, fall into none of these categories.

When offenses do not fall into any of the categories listed in Baker, it is, nonetheless, appropriate for courts to try to draw logical inferences regarding actual legislative intent. The Supreme Court has implied, however, that courts should only draw such inferences when they lead to logically compelling conclusions and when contrary conclusions are logically implausible. Ladner v. United States, 358 U.S. 169, 174, 79 S.Ct. 209, 212, 3 L.Ed.2d 199 (1958); see Barringer v. United States, 399 F.2d 557, 558 (D.C.Cir.1968); cf. United States v. Parker, 17 U.S.C.M.A. 545, 38 C.M.R. 343 (1968). This standard is essential to insure that courts do not commit the error of arriving at a judicial view of the socially preferable outcome, imputing that view to the legislature, and concluding that they have identified actual legislative intent. As a result, inferences of this sort are rare. See, e.g., United States v. Washington, 1 M.J. 473 (C.M.A.1976). We have carefully considered Article 119 in the broader context of unlawful homicides. In doing so we have noted that most federal courts considering issues similar to the one now before us have arrived at the opposite conclusion reached by most state courts. See 8 A.L.R.4th 960, 964–968, and cases cited therein. Given such a divergence of authority, it would be erroneous for this court to conclude that a logically deduced conclusion in this case is compelling and that any contrary conclusion would be logically implausible. Indeed, it appears that

the legislature never considered the question of multiplicity in the context of facts like those now before us.

■ Under these circumstances we must apply the constructive rules for determining legislative intent. Applying such rules we first conclude that both specifications arose from the same act and that the issues of multiplicity for findings and punishment are raised. As to the findings issue we find that neither specification fairly embraces the other and, therefore, that the specifications are not multiplicious for findings purposes. *Baker*, 14 M.J. at 368.

■ As to the issue of multiple punishment, we find that each specification required proof of a separate element. R.C.M. 1003(c)(1)(C). That is, Specification 1 required proof that the appellant caused the death of Reinhard E. Binder and Specification 2 required proof that the appellant caused the death of Ute Doering. As we noted in *United States v. Ridgeway*, 19 M.J. 681, 687 (A.F.C.M.R.1984), however, proper application of the separate elements rule requires that we determine whether the separate elements reflect distinct societal interests or merely reflect the manner in which the specifications were drafted. *See United States v. Beene*, 4 U.S.C.M.A. 177, 179–180, 15 C.M.R. 177, 179–180 (1954).

The element regarding the death of Mr. Binder and the element regarding the death of Ms. Doering each reflect a distinct societal interest in the preservation of the life of an individual member of the society. American society and its laws are founded upon each individual's right to life and the uniqueness, potential, and social value of each human life. There can be no doubt that the difference between killing one person and killing two people is not the same as the differences between stealing one or two pieces of property, striking one or two blows during an assault, or possessing one or two caches of drugs. Property can be replaced or exchanged for money or property of like value. The lives of Mr. Binder and Ms. Doering, however, were each irreplaceable and priceless. Both Article 118, 10 U.S.C. § 918 and Article 119 prohibit the killing of *"a human being."* [Emphasis added.] We believe this wording, though not sufficiently compelling to warrant an inference of actual legislative intent, tends to confirm our conclusion that the separate elements in the specifications before us reflect distinct societal interests in each human life and not a mere decision in the drafting of the specifications. *See United States v. Peterson*, 17 U.S.C.M.A. 548, 38 C.M.R. 346 (1968); *United States v. Stepter*, 17 U.S.C.M.A. 549, 38 C.M.R. 347 (1968); and *Parker*, 38 C.M.R. 545.

The appellant endangered multiple human lives and he was properly convicted and punished for each life he took. We have found no prejudicial errors in the record. The findings and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

SESSOMS and CANELLOS, Senior Judges, concur.