**UNITED STATES, Appellee,**

v.

**Robert D. SMITH, Senior Airman, U.S. Air Force, Appellant.**

**No. 43061/AF.**

**ACM 22860.**

U. S. Court of Military Appeals.

Jan. 17, 1983.

For Appellant: *Colonel George R. Stevens, Major Willard K. Lockwood* (on petition).

For Appellee: *Colonel James P. Porter, Major Michael J. Hoover* (on petition).

*Opinion of the Court*

·PER CURIAM:

Appellant was tried by general court-martial at Lackland Air Force Base, Texas, for various drug offenses alleged in violation of Articles 92 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. Despite his pleas he was convicted of all charges and specifications, and was sentenced to a dishonorable discharge, confinement at hard labor for 5 years, total forfeitures, and reduction to the grade of E–1. The convening authority approved the sentence as adjudged but the Court of Military Review set aside his action and ordered a new review and action. 11 M.J. 655 (1981). Once again, the convening authority approved the sentence as adjudged, and the Court of Military Review affirmed upon further review. We granted these three issues for review:

I

WHETHER CHARGING POSSESSION, SALE AND USE OF COCAINE UNDER ARTICLE 134 FAILED TO ALLEGE SPECIFIC OFFENSES UNDER THE UNIFORM CODE OF MILITARY JUSTICE AND WAS AN UNCONSTITUTIONAL SELECTIVE APPLICATION OF GENERAL FEDERAL LAW TO MILITARY PERSONNEL.

II

WHETHER CLASSIFICATION OF COCAINE AS A HABIT–FORMING NARCOTIC FOR PUNISHMENT PURPOSES VIOLATES EQUAL PROTECTION, SINCE THERE IS NO RATIONAL BASIS FOR SUCH CLASSIFICATION.

## III

WHETHER THE MILITARY JUDGE ERRED WHEN HE FAILED TO INSTRUCT THAT SPECIFICATION 4 OF CHARGE I WAS MULTIPLICIOUS WITH SPECIFICATIONS 3 AND 5, AND THAT SPECIFICATION 2 OF CHARGE II WAS MULTIPLICIOUS WITH SPECIFICATIONS 1 AND 3.

The first two issues have now been resolved against appellant in *United States v. Ettleson,* 13 M.J. 348 (C.M.A.1982), so we turn to the issue concerning the multiplicity of certain specifications.

Specifications 3, 4 and 5 of Charge I allege respectively that, contrary to Article 134, appellant possessed, used, and sold cocaine at Kelly Air Force Base, Texas, on or about August 30, 1979. As to these offenses, the evidence was that an undercover OSI informant, Airman Kevin Thompson, had gone to see appellant in order to purchase five packets of cocaine, for which he had already placed an order at an agreed price of $100.00. They went to the room of Airman Dye but since only three packets were ready for delivery, Dye made up two more in the presence of Thompson and appellant. After this was done, appellant poured out some cocaine which he and Dye then "snorted." According to Thompson, appellant invited him to "have a freebie on me," but he responded, "No, you have already started your rush." By this he meant that Smith was "[h]igh, hyperventilating." Earlier appellant had remarked to Thompson "that he had had some of the coke before and he was a little nervous."

Specifications 1, 2, and 3 of Charge II allege respectively that contrary to Air Force Regulation 30–2, Smith possessed, used, and sold methamphetamine at San Antonio, Texas, on or about January 12, 1980. In connection with these offenses, Thompson testified that he was at an off-base party when appellant attempted to sell him four packets of methamphetamine. Thompson "told him at the time I was broke" but added "could he save some until tomorrow and that I would want a hundred dollars worth." The next day Thompson located Smith at an off-base apartment, where Sergeant Bullard was present. When they offered Thompson "a freebie," he replied, "No, my head is stopped up." Ultimately, Thompson "bent over and made—went through the motions of trying and said, 'No, there is no way.'" However, Smith and Bullard then proceeded "to snort" the drug and said that "this was a pretty good batch, burned pretty bad." Finally, Thompson paid appellant $100.00 for five packets which had already been prepared for his purchase before he arrived at the apartment.

At an Article 39(a)[1] session held before the court-martial closed to deliberate on appellant's sentence, the military judge informed the parties:

I will instruct the court that Specifications 3 and 5 of Charge I are multiplicious for sentencing purposes and I will instruct the court that Specifications 1 and 3 of Charge II are multiplicious for sentencing purposes.

Trial and defense counsel specifically stated that they had no objections or requests for additional instructions, so the court members subsequently were advised by the judge that the possession and sale of cocaine "are not separate for punishment purposes" but are "merge[d] into . . . a single offense for punishment purposes." Similarly, the military judge informed the court members that the possession and sale of methamphetamine "must be considered . . . a single offense for punishment purposes." However, in his instructions and in his computation of the maximum punishment imposable, the judge did not merge the use offenses with the possession and sale of the drugs.

Defense counsel did not protest this treatment of the offenses. However, appellate defense counsel now claims that the use offenses also were multiplicious with the possession and sale offenses for punishment purposes. Stated succinctly, the argument runs:

The informant's testimony revealed that on both 30 August 1979, and 12 January 1980, the appellant used a por-

---

1. *See* Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

tion of the same drug which he allegedly possessed and sold ... Under these facts, we submit that the use specification was multiplicious with the virtually simultaneous possession and sale ... [T]he accused, as a part of an integrated transaction at the same time and place, used a portion of a drug which was possessed and sold. The offenses were multiplicious for punishment purposes.

In *United States v. Baker*, 14 M.J. 361 (C.M.A.1982), we have just considered the question of multiplicity. Under the analysis presented there, the various specifications in the case at bar were not multiplicious for purposes of pleadings and findings. However, the specification of possession clearly merged for sentencing purposes with either the use offense or the sale offense. The real issue is whether the use of each drug was multiplicious with its sale.

Clearly, a use offense involves an element not required to establish a sale, for a drug can be used without being sold and can be sold without being used. Thus, under the *Blockburger*[2] rule as to separateness of offenses for punishment purposes, the use and sale offenses were separate for purposes of determining the maximum sentence that could be adjudged.

However, *United States v. Baker, supra,* did not content itself with the *Blockburger* rule and also inquired whether the offenses involved there were products "of a single impulse" and violated the same "social standard." *See* para. 76a(5), Manual for Courts-Martial, United States, 1969 (Revised edition). Since the Court concluded that the aggravated assault and the threat involved in that case stemmed from the same impulse and violated the same social norm, the two offenses merged for punishment purposes.

Unlike that case, the factual situation here meets the requirements for separate punishment. Use and sale involve different social standards, for the former is concerned with preventing the user from disabling himself from performing his military responsibilities, while the latter seeks to avoid the distribution to others of a substance which may injure or disable them. In one sense, the offenses are mutually exclusive in that a person who uses all of his supply of drugs will have none to sell, or, vice versa, one who sells all of his supply will have none left for his own use.

More than a single impulse was present here. Even before Thompson met appellant to purchase the cocaine, Smith had already started using the drug and was showing signs of being under its influence. Moreover, the fact that the informant himself flatly refused to use either the cocaine or methamphetamine ("the freebies") demonstrates that the use of the drugs by appellant and his cohorts was not merely a tactic for accomplishing a drug sale. We note, too, that "the intent for" the two "offenses ... [was not] inferred from the same fact" and that there was a "breach of separate duties." *See* para. 76a(5), Manual, *supra*.[3]

Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

The majority opinion correctly notes that "a use offense involves an element not required to establish a sale," and vice versa. 14 M.J. 430, 432. Thus under the test[*] provided us by the President, upon the express delegation of authority by Congress, the use and sale offenses here were separate for punishment purposes. *See United States v. Baker,* 14 M.J. 361, 371 (C.M.A.1982) (Cook, J., dissenting). I need go no further in concluding that the military judge acted within his discretion in treating these offenses separately for punishment purposes.

---

**2.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932).

**3.** For a recent discussion of separability of drug offenses in a different context, *see United States v. Chisholm,* 10 M.J. 795, 797 n. 2 (A.F. C.M.R.1981).

[*] Para. 76a(8), Manual for Courts-Martial, United States, 1951. *See also* para. 76a(5), Manual for Courts-Martial, United States, 1969 (Revised edition).