UNITED STATES

v.

**Airman First Class Jeffrey L. BOLDEN, FR 568–51–7030, United States Air Force.**

**ACM S25863.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Aug. 1982.

Decided 19 July 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain John V. Sullivan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams, Jr.

Before HEMINGWAY, CANELLOS and RAICHLE, Appellate Military Judges.

## DECISION

RAICHLE, Judge:

The accused pled and was found guilty of four specifications alleging transfer and possession of hashish and marijuana, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for three months and reduction to airman basic. The accused assigns three errors for our consideration; 1) the military judge erred in admitting evidence of an over-aged nonjudicial punishment; 2) the specifications alleging possession of marijuana and possession of hashish are multiplicious for purposes of findings; and 3) the appellant was denied speedy review of his conviction. We will address them *seriatim*.

I

During the sentencing proceedings, a stipulation of fact pertaining to an incident of nonjudicial punishment imposed on the accused was admitted into evidence as Prosecution Exhibit 6. The same nonjudicial punishment was also listed on Prosecution Exhibit 7, Unfavorable Information File Summary. The punishment had been imposed more than two years prior to the trial and therefore, pursuant to Air Force Manual 111–1, Military Justice Guide, 25 August

1975, paragraph 5–13, did not qualify for admission into evidence at the time of trial. The trial defense counsel agreed to the stipulation of fact and interposed no objection to Prosecution Exhibit 7.

The accused contends that the military judge's error in failing to exclude evidence of the over-aged nonjudicial punishment as contained in Prosecution Exhibits 6 and 7 was not waived by trial defense counsel's failure to object since it was plain error within the meaning of Military Rule of Evidence 103(d). We do not agree.

■ The plain error rule serves as an exception to the general rule that counsel's failure to raise an objection during trial results in a waiver of the particular error for appeal purposes. Mil.R.Evid. 103(d) enables appellate courts to recognize certain errors even though they were not preserved by counsel during the trial. The wording of the rule was taken almost verbatim from Federal Rule of Evidence 103(d) which, in turn, was derived from Rule 52(b) of the Federal Rules of Criminal Procedure.* Interpretations of each may be used to gain some insight into the rather involved issue of "plain error".

Careful analysis of what has been written by other courts and by legal academicians, along with our own understanding of the concept, leads us to the conclusion that there does not now exist, nor is it possible to create, a bright-line rule of application with respect to plain error. Instead, we agree with the following:

> The sounder perception is that ... notice of an error not raised below must be made on the facts of the particular case, and there are no hard and fast classifications in either the application of the principle or the use of a descriptive title. Indeed the cases give the distinct impression that "plain error" is a concept appellate courts find impossible to define, save that they know it when they see it.

3 Wright, *Federal Practice and Procedure*, Sec. 856 (1969).

In *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), while addressing plain error as embodied in Federal Rule of Criminal Procedure 52(b), the Supreme Court held:

> It grants the Courts of Appeals the latitude to correct particularly egregious errors ... Rule 52(b) was intended to afford a means for the prompt redress of miscarriages of justice. By its terms, recourse may be had to the rule only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.

*U.S. v. Frady, supra,* at 163, 102 S.Ct. at 1592.

Citing lower court opinions, the Supreme Court also found that:

> Plain error is error which is "both obvious and substantial." ... The plain error rule is not a run-of-the-mill remedy. The intention of the rule is to serve the ends of justice; therefore, it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice".

*U.S. v. Frady, supra,* at 163 n. 14, 102 S.Ct. at 1592 n. 14.

■ Viewing the plain error rule as an exceptional remedial measure requires the courts to exercise restraint in using it. It necessarily follows that all prejudicial errors do not rise to the level of plain error. On the other hand, there cannot be plain error which is not prejudicial to the rights of an accused. "Put another way, plain error on its face is *ipso facto* prejudicial; and once plain error is determined, no inquiry in respect to whether it is prejudicial is necessary or permissible." *Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852, 864 (1978).

■ In a trial to determine guilt or innocence, the existing rule is that even where there is a finding of plain error, the error does not in and of itself require that the trial court's verdict be disturbed. In some

---

\* That rule states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

cases, that verdict may be sufficiently supported by evidence independent of that prejudicial to the accused. *See, e.g., U.S. v. Wilson,* 690 F.2d 1267 (9th Cir.1982).

■ The same reasoning does not hold true for a sentencing proceeding. In order to determine an appropriate sentence, the court considers and balances all of the evidence submitted by the opposing parties. The prejudicial effect of erroneously admitted evidence is neither negated nor made inconsequential by the fact that the prosecution may have submitted other evidence in aggravation. It is inconceivable that an error which by our standards must be "egregious" or "grave" or "substantial" would not have had a substantial effect upon the sentence adjudged by the court. Therefore, while not all prejudicial errors may rise to the level of plain error, with respect to a sentencing proceeding once there is a finding of plain error, reassessment of the adjudged sentence is required.

To summarize, the plain error rule creates a power in the appellate courts to recognize obvious, substantial errors which have occurred during trial. It may be invoked even though counsel, by not raising an objection at trial, has failed to preserve the error for appeal. As an exceptional remedial measure, the plain error rule should be used only in exceptional circumstances to prevent great miscarriages of justice. Because some errors, though prejudicial, will not create great miscarriages of justice, it necessarily follows that all prejudicial errors do not rise to the level of plain error. Finally, where the error has occurred in a proceeding to determine sentence, a finding of plain error, in and of itself, requires that the sentence be reconsidered.

■ Applying these precepts to the case at bar, a finding of plain error based on the facts presented would be contrary to the spirit of the plain error doctrine as we have defined it.

That definition requires that the court exercise restraint in using the plain error rule, reserving it for those exceptional circumstances where it is necessary to prevent a great miscarriage of justice. While we concede that in the case a bar the accused may have suffered some prejudice as a result of the error, to the extent that something beyond the ordinary must be present to warrant a finding of plain error, there is nothing to distinguish this case from the typical case involving an erroneous admission of evidence.

In other cases involving the failure of the trial judge to exclude nonjudicial punishment evidence, the Army Court of Military Review has used the same language as state and federal courts in applying the plain error rule. For example, in *United States v. Beaudion,* 11 M.J. 838 (A.C.M.R.1981), a record of nonjudicial punishment was admitted into evidence lacking legible elections and the signature of the accused on those portions pertaining to demand for trial, request for open hearing, assistance of counsel, and submission of matters in defense and extenuation. Under the circumstances there presented, the Court concluded that plain error did not exist, holding that, "... invoking waiver will not cause a miscarriage of justice nor will it impugn the reputation and integrity of the courts or amount to denial of a fundamental right of the accused...".

*United States v. Gordon,* 10 M.J. 278 (C.M.A.1981), also involved the failure to exclude evidence of a nonjudicial punishment which was arguably inadmissible under applicable guidelines. There, the Court of Military Appeals held that even assuming error was committed by receiving the exhibit in evidence, it did not constitute plain error and was waived by failure of the defense counsel to interpose a timely objection thereto at trial. The Court also commented upon the very expansive view of waiver by counsel's failure to object encompassed in the then new Military Rules of Evidence. *See also United States v. Webel,* 16 M.J. 64 (C.M.A.1983).

In the case at bar, while we would not go so far as to say that a lesser sentence was implausible absent the error, considering the charge of which the accused was found

guilty, the maximum allowable punishment, and the sentence adjudged, it can hardly be said that a miscarriage of justice has taken place. Also, we are unable to find that the accused was denied a fundamental right or that his trial was fundamentally unfair.

Therefore, we fail to find the exceptional circumstances necessary to distinguish this case from *Beaudion* and *Gordon,* and bring it within the scope of the plain error rule. Thus, to apply the doctrine here would contravene our own finding that the courts should practice restraint in recognizing errors not preserved during trial. More importantly, however, the precedential effect of such a ruling would be to transform Rule 103(d) of the Military Rules of Evidence into at best, a run-of-the-mill remedy, and at worst, a residual, catch-all rule, thereby allowing an accused to raise on appeal any and every error not raised during trial.

While at first glance this decision may appear to conflict with the decision reached in *United States v. Yarbrough,* 15 M.J. 569 (A.F.C.M.R.1982), the two cases are distinguishable. Here the accused was charged with drug offenses; the nonjudicial punishment was for a failure to go and disobedience of an order to empty an ashtray. In *Yarbrough,* also a drug case, the inadmissible Article 15 was also for a previous drug offense, thus evidencing a course of criminal conduct involving drugs. Given these differing circumstances, we find that the error in this case does not rise to the level of plain error.

This decision is not to say that in every case where there is an erroneous admission of nonjudicial punishment we will not find plain error. We only point out the distinction to show that the two cases are not analogous and, therefore, are not contradictory. Each case must still be judged based on its own peculiar facts and circumstances. Based on the facts and circumstances of the case at bar, we hold that the trial judge's failure to exclude the evidence contained in Prosecution Exhibits 6 and 7 was not plain error and thus was waived by the acquiescence of defense counsel to Prosecution Exhibit 6 and his failure to object to Prosecution Exhibit 7.

## II

■ The accused next argues that specification 3 of the Charge, possession of hashish, should be merged with specification 4, possession of marijuana. We agree. Both substances were discovered in a closet during a search of the accused's quarters. In *United States v. Nelson,* 47 C.M.R. 395 (A.C. M.R.1973), hashish was determined to be encompassed within the definition of marijuana. The Army Court held that, "[o]ne can no more be separately convicted for the hashish than he could be convicted for each of . . . numerous sub-containers of marijuana".

Finding that hashish is marijuana, specifications 3 and 4 are duplicative in fact as that term is defined in *United States v. Tyler,* 14 M.J. 811 (A.C.M.R.1982). As such, the finding of guilty as to specification 3 merged with the finding of guilt as to specification 4; specification 3 of the Charge will be dismissed.

The trial judge properly treated the specifications as multiplicious for sentencing purposes and the accused has failed to show any real prejudice suffered as a result of the error. Therefore, no further action with regard to the sentence is required.

## III

■ The accused's trial concluded on 19 August 1982; the convening authority took his action on 15 October. The staff judge advocate review is dated 3 November, but was not served on trial defense counsel until 21 December. The supervisory authority took his action on 27 December, some 130 days after trial. The government correctly cites *United States v. Banks,* 7 M.J. 92 (C.M.A.1979), as the controlling authority with regard to the error assigning denial of speedy review of the accused's conviction. Although later Court of Military Appeals decisions have easily found prejudice in cases with inordinate, unexplained delays, they do not go so far as to resurrect the inflexible standard of *Dunlap*

*v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Decisions such as *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982), were handed down with an eye toward admonishing the Government to cease the delays and thus prevent the Court from having to return to the *Dunlap* 90-day standard. The prevailing rule is that "applications for relief because of delay of final action of the convening authority will be tested for prejudice". *United States v. Banks, supra* at 94.

Appellant alleges that he was prejudiced to the extent that as a result of the delay, he was precluded from consideration for a substantial sentence option by the supervisory authority—specifically, the option of serving his confinement at the 3320th Correction and Rehabilitation Squadron (CRS), with a view toward salvaging his Air Force career.

However, this allegation of prejudice is adequately addressed by the staff judge advocate review. By suggesting to the supervisory authority that he not approve the bad conduct discharge if, in his discretion, he decides that the 3320th CRS would have been the appropriate place of confinement, the problem of the supervisory authority's lack of an option geared towards salvaging the accused's career was remedied. Therefore, the accused was not prejudiced by the delay.

For the reasons stated, the finding of guilty of specification 4 of the Charge is set aside and the specification is ordered dismissed. The findings of guilty, as modified, and the sentence are

AFFIRMED.

HEMINGWAY, Senior Judge, and CANELLOS, Judge, concur.