## UNITED STATES

v.

**Airman Harold N. PAULEY, FR 550–67–4308 United States Air Force.**

ACM S27325.

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Nov. 1986.

Decided 12 March 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Charles L. Wille.

Appellate Counsel for the United States: Colonel Joe R. Lamport.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge.

Pursuant to his pleas the appellant was convicted by special court-martial of forging a $50.00 credit union draft on 18 September 1986. The appellant took a draft from his roommate's checkbook while the latter was absent, placed his name on it as payee and signed his roommate's name on it as the maker, and then cashed the draft at the base exchange. His roommate testified all this was done without his knowledge or authorization. The approved sentence includes a bad conduct discharge, fifty days confinement, forfeiture of $320.00, and reduction to airman basic.

Although no errors have been assigned, we feel impelled to closely examine the mention of specific instances of uncharged misconduct by trial counsel during the presentencing proceedings and the military judge's resulting instructions to the court members.

During the defense's case in extenuation and mitigation the military judge admitted into evidence, without prosecution objection, an affidavit executed by Staff Sergeant (SSgt) C. In the affidavit SSgt C opined, "I do not believe [the appellant] would commit this type or any type of offense again." In an Article 39a, 10 U.S.C. § 839a session after the defense had rested, trial counsel requested permission to call SSgt C to the stand in rebuttal. He

wished to inquire into the basis for SSgt C's opinion, quoted above, by citing specific instances of misconduct. Also he thought this would rebut the appellant's assurances in the latter's unsworn statement to the effect that nothing like this (presumably the forgery) would ever happen again and this incident had taught him a valuable lesson. Despite the defense's objection that the prosecution was just trying to show the appellant was a bad person and the probative value of the information was outweighed by the prejudicial aspects, the military judge ruled in favor of the prosecution. Nevertheless, the military judge stated he would give a limiting instruction to the court to the effect, "That punishment is not to be enhanced for these offenses, but they may consider these *matters* for any value that it has to show whether the accused has rehabilitation potential." (emphasis supplied.) The defense made no objection to, or comment on, that proposed instruction.

Once SSgt C was on the witness stand the following exchange transpired between him and trial counsel:

Q Sergeant [C], did you know that [the appellant] took the credit cards of a Mr. and Mrs. Robinson and that, without their permission, used their credit card on September 21st to buy clothing at the Merry Go Round; September 23rd to buy cigarettes at the 7 Eleven; September 26th to buy records and tapes at the Sound Shop; September 26th to buy clothing at the Colony Mens Shop; on September 26th he bought food at the 7 Eleven; on September 30th he bought three pairs of shoes at the Pay-Less Shoe Store; and on October 1st he spent $16.55 at TCR; and all this without the authorization of the owners of those credit cards? Would that change your opinion about [the appellant] and this—whether he would commit this type of offense again?

A No, sir.

Q It wouldn't change your opinion at all?

A No, sir.

Q Sergeant [C], do you know that two days ago, in preparation for this trial, [the appellant] prepared an Eglin Federal Credit Union statement, what appeared to be an Eglin Federal Credit Union monthly statement, by whiting out the important documents, by retyping it with a computer-type typewriter, in order to fake a transfer—evidence that a transfer of $50 was made to the account of [the forgery victim]; when in fact, he never transferred that money to [the victim of the forgery]. He's never paid that back. Would that—if you knew about that, would that change your opinion about [the appellant] and whether he would commit this type of offense again?

A I don't think it would.

Q That wouldn't change your opinion at all?

A Might, if he keeps—if he—if he did it again.

Q Well, Sergeant [C], we have one incident with a forged check that he's pled guilty to. We have this incident of unauthorized use of credit cards belonging to the Robinsons. We have this incident where he has forged an Eglin Federal Credit Union monthly statement, trying to show that he has paid back [the forgery victim] when, in fact, that has not been done. Those three incidents, taken together, does that change your opinion about [the appellant] and whether he would commit this type of fraud offense again?

A I don't think so. I think he's a good airman.

Both counsel gave arguments on the sentence, but neither mentioned the credit card or credit union statement incidents. Trial counsel did argue that the appellant stole the draft from his roommate. In instructing the court, the military judge stated:

The accused is to be sentenced only for the offense of which he's been found guilty by this court ...

Now trial counsel, in argument, argued that the accused stole his roommate's check and then forged it. As I've indicated to you, the accused is to be punished only for the offense which is before this court, and that is the offense of forgery. You have also heard matters regarding the unauthorized use of credit cards and an effort to falsify Eglin Federal Credit Union documents on the part of the accused to make it appear that his obligation to the Credit Union victim had been satisfied. Punishments may not be enhanced or increased based upon these matters, but you may consider *this evidence* for its value, if any, in determining the rehabilitation potential of the accused. (emphasis supplied.)

The defense did not object to this instruction.

Rule for Courts-Martial (R.C.M.) 1001(b)(5) permits the prosecution to present evidence in the "form of opinion" as to the accused's potential for rehabilitation. "[I]nquiry into specific instances of conduct is not permitted on direct examination ..." M.C.M., 1984, App. 21, R.C.M. 1001(b)(5). However, "[o]n cross-examination, inquiry is allowable into relevant and specific instances of conduct." R.C.M. 1001(b)(5). Of course, the defense may present evidence to the effect that the accused has good potential for rehabilitation. R.C.M. 1001(c)(1)(B). If that is done by the defense, then the prosecution may rebut it. R.C.M. 1001(d).

In the instant case the defense opened the door for rebuttal when it introduced SSgt C's statement quoted above and the appellant's unsworn statement. *United States v. Strong,* 17 M.J. 263 (C.M.A.1984). However, the examination of SSgt C did not produce any evidence of uncharged misconduct. His answers do not acknowledge additional misconduct by the appellant; they merely disclose he wouldn't change his mind as to the appellant's rehabilitative potential if the latter had committed the offenses trial counsel propounded in the questions. Assuming *arguendo* that the procedure followed was correct, the ultimate problem in this case is that there was no evidence of this uncharged misconduct.

The military judge, in his instructions, treated the trial counsel's questions as evidence. We must presume then that the court considered that it had before it evidence of uncharged misconduct which was apparently even more serious than the single offense charged. However, assertions of counsel are not evidence. *United States v. Watson,* 14 M.J. 593 (A.F.C.M.R.1982). Thus, the military judge erred when he instructed the court that the matters regarding the unauthorized use of the credit card and the falsification of the credit union document were evidence.

Nevertheless, "Failure to object to an instruction ... before the members close to deliberate on the sentence constitutes waiver in the absence of plain error." R.C.M. 1005(f). As the defense did not object to the instruction, we now consider whether this error was plain error.

In *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986), the United States Court of Military Appeals succinctly described the plain error doctrine. First, the error must be obvious. Secondly, it must also be substantial. Lastly, the error "must also have 'had an unfair prejudicial impact on the jury's deliberations.'" The "doctrine is invoked to rectify those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,'" and "[a]s a consequence, it 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Fisher, supra,* 328–329.

We have indicated plain error must be "egregious", "grave", or "substantial". *United States v. Bolden,* 16 M.J. 722, 725 (A.F.C.M.R.1983). The United States Army Court of Military Review would not invoke the doctrine unless the error would cause miscarriage of justice, impugn the reputation and integrity of the courts, or

amount to a denial of a fundamental right of the accused. *United States v. Beaudion,* 11 M.J. 838 (A.C.M.R.1981). Where error in admitting a document was "palpably patent and egregious" and the admission of the document was a "conspicuously gross situation", the United States Navy-Marine Corps Court of Military Review found plain error. *United States v. May,* 18 M.J. 839, 847 (N.M.C.M.R.1984).

Not every error in sentencing instructions is plain error. For instance, it is not necessarily plain error for the military judge to fail to instruct the members that proposed sentences are to be arranged in order of severity and voted on "beginning with the lightest." *United States v. Fisher, supra.* However, the courts have applied the plain error doctrine where uncharged misconduct, in the form of inadmissible nonjudicial punishments and civilian convictions, was admitted into evidence during the presentencing procedure. *United States v. Dyke,* 16 M.J. 426 (C.M.A. 1983); *United States v. McGill,* 15 M.J. 242 (C.M.A.1983); *United States v. May, supra; United States v. Calin,* 11 M.J. 722 (A.F.C.M.R.1981). On the other hand, in less aggravated circumstances, courts have sometimes found improper admission of nonjudicial punishments during sentencing was not plain error. *United States v. Gordon,* 10 M.J. 278 (C.M.A.1981); *United States v. Beaudion, supra; United States v. Bolden, supra.*

In the case before us the court members had properly before them the appellant's conviction of one fifty dollar forgery and the fact the appellant had stolen a draft from his roommate in order to accomplish the forgery. Because of the military judge's instructional error, the members also had before them purported "evidence" of eight additional instances of misconduct, seven unauthorized credit card purchases and one false alteration of a credit union statement. They were invited to consider that misconduct in determining the rehabilitation potential of the appellant. Under these circumstances we believe any court would have adjudged a punitive discharge, as did this court.

The appellant's commander, in an affidavit, and his first sergeant, in testimony, both opined the appellant had no potential for rehabilitation for continued service in the Air Force. The evidence also established that the appellant had not repaid the fifty dollars. Other than the offense of which he was convicted and the circumstances surrounding it, the appellant's record appeared to be clean. Nevertheless the instructional error gave the court the impression that the appellant was a habitual offender, a person patently unfit to remain in the Air Force. This was an obvious error; there was no evidence of the additional misconduct. This was a substantial error; it advised the court it could consider eight additional instances of misconduct. It had an unfair prejudicial impact upon the deliberations of the members; a punitive discharge was virtually mandated under the circumstances. The integrity of our military justice system is seriously damaged when our courts consider matters adverse to accused which are not in evidence. A miscarriage of justice results. There was plain error here.

In this case the appellant, because of the instructional error, lost any meaningful opportunity to avoid a punitive discharge. While we affirm the findings of guilty, we set aside the sentence. A rehearing on the sentence may be held. *See United States v. Berger,* 23 M.J. 612, 616 (A.F.C.M.R. 1986).

Senior Judge SESSOMS and Judge LEWIS concur.