UNITED STATES

v.

**Frederick J. KRAJEWSKI, 547 19 4187, Equipment Operator Constructionman Recruit (E–1), U.S. Naval Reserve.**

**NMCM 89 0621.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 7 July 1988.

Decided 17 Jan. 1990.

Lt Mary Anne Razim, JAGC, USNR, Appellate Defense Counsel.

LtCol Joseph S. Uberman, USMC, Appellate Government Counsel.

Before BYRNE, C.J., and FREYER and STRICKLAND, JJ.

FREYER, Judge:

The appellant was charged with, and was found guilty in accordance with his pleas of, absence without leave for less than one day, failure to obey a lawful order by consuming alcohol in a punitively restricted status, and incapacitation for duty as a result of previous overindulgence in intoxicating liquor or drugs. He was also charged with desertion terminated by apprehension but pled guilty to, and was found guilty of, only absence without leave not terminated by apprehension. The Government did not proceed on the greater offense of desertion but did proceed unsuccessfully on the apprehension. He was also charged with possession of hashish and traces of hashish in two separate specifications, of which he was found guilty notwithstanding his pleas. A specification alleging violation of a lawful general regulation by wrongful possession of drug abuse paraphernalia was dismissed by the military judge, *sua sponte*, for failure to allege that the possession was with the requisite intent. The sentence, which was approved by the convening authority without change, provides for forfeiture of $400.00 per month for four months, confinement for four months, and a bad-conduct discharge.

I

The appellant's first assignment of error arises from the denial of his request for individual military counsel. Trial was in California, and the requested counsel was located in Rota, Spain, where the appellant's construction battalion had previously been deployed. The request was forwarded to the commander of the requested counsel because the appellant claimed an attorney-client relationship with the requested counsel. The commander of the requested counsel summarily denied the request after determining that a qualifying attorney-client relationship did not exist. The military judge ruled that the request had been properly denied. The issues raised by the military judge's ruling are: (1) Did a qualifying attorney-client relationship exist between the requested counsel and the appellant? (2) Under the pertinent regulations, which are identified and discussed *infra*, was the commander of the requested counsel authorized to rule upon the validity of the appellant's claim of an attorney-client relationship? (3) If the commander of the requested counsel determined that a qualifying attorney-client relationship did not exist, did he act properly in summarily denying the request without applying the judicially developed criteria for determining reasonable availability solely because the requested counsel was located in a different judicial circuit and more than 100 miles from the situs of trial, notwithstanding the appellant's claim of an attorney-client relationship?

Initially, we have determined, on the basis of the comprehensive and well-supported essential findings by the military judge, that the issue of whether or not a qualifying attorney-client relationship existed in this case is controlled by *United States v. Taylor*, 3 M.J. 947 (NCMR), *pet. denied*, 4 M.J. 194 (C.M.A.1977), and must be decided in the negative. *See also United States v. Saenz*, 18 M.J. 327 (C.M.A. 1984) (Everett, C.J., concurring). Such determination is, however, not dispositive of the assignment of error, because we deem it necessary to consider the military judge's interpretation of the responsibilities of the requested counsel's commander pursuant to Rule for Courts–Martial 506(b)(2), Manual for Courts–Martial, United States, 1984, and section 0120b(2)(c), Manual of the Judge Advocate General of the Navy (hereinafter "JAGMAN"). We believe that the military judge's interpretation produces not only the only sensible result, but also the result most consistent with the restrictive motivation underlying the 1981–1982 and 1983–84 changes affecting the right to individual military counsel generally. We are

troubled, nevertheless, by the departure from the literal wording of JAGMAN 0120b(2) that the military judge's interpretation represents.

The literal wording of JAGMAN 0120b(2) indicates that, with respect to a requested counsel who does not meet the same judicial circuit nor the 100–mile limitation (hereafter referred to as "out-of-area counsel"), the *bare assertion* by an accused of the existence of an attorney-client relationship gets the accused two rights which, in the absence of such *bare assertion*, would not be accorded:

If the requested military counsel is ... a member of the Navy or Marine Corps and unavailable within the meaning of subsections (b)(ii)(A)–(D), *and there is no claim of an existing authorized attorney-client relationship* regarding a charge in question, as defined in subsection b(2)(b)(iii), the convening authority shall promptly deny the request.... *In all other cases, the convening authority shall promptly forward the request to the commander of the requested counsel.*

JAGMAN 0120b(2)(c)(ii)(A) (emphasis supplied).

If the requested counsel is unavailable within the meaning of subsections (b)(ii)(A)–(D) *and there is no claim of an existing attorney-client relationship* regarding a charge in question, the convening authority shall so inform the accused, in writing.... Otherwise, *the convening authority shall make the determination of whether the requested military counsel will be reasonably available to act as individual military counsel in accordance with the procedures contained in subsection (iii).*

JAGMAN 0120b(2)(c)(ii)(B) (emphasis supplied).

JAGMAN 0120b(2)(c)(iii), which JAGMAN 0120b(2)(c)(ii)(B) requires the requested counsel's commander to apply when confronted with a claim of an existing attorney-client privilege regarding a charge in question, merely codifies the pre–1982 judicially developed criteria for reasonable availability. It does not incorporate, either

expressly or by fair implication, the additional limitation, newly introduced by virtue of Secretarial authority and set forth in JAGMAN 0120b(2)(b), of within the same judicial circuit or 100 miles. This is so because JAGMAN 0120b(2)(c)(iii) purposely addresses the concept of reasonable availability in the same limited sense as JAGMAN 0120b(2)(b)(ii)(E), which specifically cross-references it, vice the more inclusive (of *per se* restrictions) sense of JAGMAN 0120b(2)(b).

The military judge held that, although the accused's mere claim of an attorney-client relationship is sufficient to get a request that would otherwise be summarily denied by the convening authority forwarded to the commander of the requested counsel, the first responsibility of that commander is to determine whether or not an attorney-client relationship of the type defined in JAGMAN 0120b(2)(b)(iii) exists, and that, once the commander determines that such a relationship does not exist, *the commander has no further discretionary responsibility* and, like the convening authority when no claim of an attorney-client relationship is made, must summarily deny the request solely by virtue of the same judicial circuit or 100–mile limitation. Consequently, a reasonable availability determination of the type described in JAGMAN 0120b(2)(c)(iii) would be made if, *but only if,* the commander of the requested out-of-area counsel determined that a qualifying attorney-client relationship did exist (*in which case reasonable availability would not be the appropriate standard*). Otherwise, the requested counsel's availability would be determined in accordance with *JAGMAN 0120b(2)(b)(ii),* including the same judicial circuit or 100–mile limitation, which is equivalent to saying that the commander of the requested out-of-area counsel will summarily deny the request.

■ Any interpretation which accords rights on the basis of a bare assertion or a mere claim is clearly untenable unless the plain language will support no other interpretation. In order to sustain the military judge's interpretation, it would be necessary to interpret the word "claim," as used

in JAGMAN 0120b(2)(c)(ii)(B)—*but not in 0120b(2)(d)(ii)(A)*—to mean "claim determined to be valid." Not only would this involve interpreting the word "claim," as used in virtually identical phrases in consecutive subsections, differently, but we are also struck by the absence of any express authority anywhere in JAGMAN 0120b(2) to pass upon the validity of such a claim. In particular, there is absolutely nothing authorizing the commander of the requested counsel to whom a request is forwarded because of such a claim to make a threshold determination regarding its validity, nor is there any authority for the commander of a requested out-of-area counsel to whom a request is forwarded ever to disregard the factors set forth in JAGMAN 0120b(2)(c)(iii) in making a reasonable availability determination *unless there is no claim of an existing attorney-client relationship.* On the contrary, JAGMAN 0120b(2)(c)(ii)(A) requires the convening authority forwarding such a request to provide information relevant to a reasonable availability determination in the sense of JAGMAN 0120b(2)(c)(iii) in *all* cases where the claim of a qualifying attorney-client relationship is made, and JAGMAN 0120b(2)(c)(ii)(B) then requires the commander of the requested counsel to make a reasonable availability determination in accordance with the procedures contained in JAGMAN 0120b(2)(c)(*iii*), period! [1]

▮ Since no reasonable availability determination in accordance with the procedures contained in JAGMAN 0120b(2)(c)(*iii*) was made in response to the appellant's request for individual military counsel, notwithstanding the claim of an attorney-client relationship, we conclude that the request was erroneously denied. Such an error is to be tested for prejudice. *United States v. Redding,* 11 M.J. 100 (C.M.A.1981).

▮ The first paragraph of this opinion indicates the offenses of which the appellant was convicted in the context of the charges against him. From our independent examination of the record, we are firmly convinced that the result obtained by the detailed defense counsel was the best that could reasonably be expected, and that the individual military counsel requested by the appellant would have done no better. A motion to suppress was clearly doomed by the factual situation leading to seizure of the evidence, and the detailed defense counsel successfully beat back the Government's effort to convict his client of termination of an absence without leave by apprehension and made the right motion regarding findings multiplicity, on the basis of which he will obtain relief here. In presentencing, the Government's arsenal against him included two nonjudicial punishments, one of which involved the wrongful use of marijuana, and a summary court-martial, all occurring in the five months preceding trial. Even so, a sentence considerably less than the maximum for a special court-martial was obtained. On the whole record, we are completely satisfied that the erroneous processing of the appellant's request for individual military counsel was harmless error in this case.

## II

▮ The second assignment of error charges the military judge with having abandoned his impartial role by repeatedly interrupting trial defense counsel throughout his arguments. The assignment focuses on the arguments relative to the motion for appropriate relief based on denial of the requested individual military counsel and a motion to suppress evidence disclosed by an alleged search. We have examined the record closely in this regard. While many

---

**1.** We have considered the possibility that the reference to "subsection (iii)" at the end of JAGMAN 0120b(2)(c)(ii)(B) might refer to (b)(iii) vice (c)(iii), but we have rejected it for three reasons: that it would lead to incorrect results in other situations; that (c)(iii) is found under the heading of "Procedure," whereas (b)(iii) is not, and a fuller statement of the reference is "the procedures contained in subsection (iii)";

and, finally, that the style consistently employed in the JAGMAN would require specifying the previous subheading if it was different from the subheading in which the reference was located; *i.e.,* "subsection (iii)" located in a paragraph under subsection (c) means "subsection (c)(iii)"; in order to reference a subsection (b)(iii) in a paragraph under subsection (c), it would be necessary to use "subsection (b)(iii)."

of the interruptions could be viewed from the cold record as indicating impatience, they could just as well be viewed as designed to assist the defense counsel by challenging him to sharpen his analysis so as to present more effective argument. The latter view is supported by a series of similar interruptions by the military judge during the presentation of evidence designed to elicit an explanation of the relevance of certain lines of questioning. While the principal function of a criminal trial is not the education and training of counsel, there is nothing wrong with combining that function so long as it can be accomplished without sacrificing the principal function of doing justice and affording the parties a fair trial. Considering the lack of any objection or apparent offense taken by the trial defense counsel, the absence of any *voir dire* or challenge for cause, the submission of a request for trial by the military judge alone, the similar treatment accorded the trial counsel under like circumstances, and the complete development of the issues demonstrated by the record, we conclude that the military judge did not abandon his impartial role.

### III

At an appropriate point in the trial, the defense moved for a ruling that Charge IV, involving possession of 5.30 grams of hashish in cube form, was multiplicious for findings with the Additional Charge, involving possession of the trace amounts of hashish in a brass pipe. Both items were discovered in the pockets of the appellant's civilian trousers at the same time. For reasons not apparent in the record, the military judge posed the issue in terms of possession of *different* drugs at the same time and place, when the real issue involved possession of *the same* drug in two different containers at the same time and place, a classic multiplicious for findings situation. *United States v. Nelson,* 47 C.M.R. 395 (ACMR), *pet. denied,* 48 C.M.R. 1000 (C.M.A.1973); *see also United States v. Bolden,* 16 M.J. 722 (AFCMR 1983). Accordingly, we direct that the specification of the Additional Charge be combined with the specification of Charge IV so that the

finding of the latter specification will encompass possession of 5.30 grams plus trace amounts of hashish, or, as the military judge found by exceptions and substitutions, "marijuana in the hashish form." Since the military judge did indicate that Charge IV and the Additional Charge were multiplicious for sentencing, the accused has not been prejudiced as to the sentence.

The findings of guilty, as thus modified, and the sentence, as approved on review below, are affirmed.

Chief Judge BYRNE and Judge STRICKLAND concur.