**UNITED STATES**

v.

**Major Arnhein T. CUMBEE, 309–54–3922 FR, United States Air Force.**

**ACM 27947.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 June 1989.

Decided 28 March 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni and Major Paul H. Blackwell, Jr.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

BLOMMERS, Senior Judge:

Consistent with his pleas, the appellant was found guilty of ten specifications of drug abuse all on diverse occasions, including wrongful use of cocaine and demerol, and wrongful distribution of cocaine, demerol and valium, as well as two specifications each of adultery and making a false statement under oath, in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934.[1] Electing trial before a military judge sitting alone, he was sentenced to dismissal from the service, 17 years confinement and forfeiture of $2,000.00 pay per month for 204 months. In accordance with the terms of a pretrial agreement, the convening authority reduced the term of confinement to 10 years and approved the remainder of the sentence as adjudged. Before us three matters are raised.

---

1. The appellant was also charged with signing a false travel voucher, but that offense was withdrawn before arraignment. He was acquitted of three specifications alleging that he imported cocaine, demerol and valium into the United States, and acquitted of a larceny charge alleging theft of drugs and syringes, property of the United States Air Force. With regard to the false voucher offense (Charge I and its specification), we note that the court-martial order promulgating the results of trial lists the wrong article of the UCMJ.

*Multiplicity*

■ It is asserted that Specifications 1 (use of cocaine) and 7 (distribution of cocaine) of Charge II and that Specifications 4 (use of demerol) and 8 (distribution of demerol) of the same charge, respectively, are multiplicious for sentencing. This assertion was raised at trial and is therefore preserved for appellate review. *United States v. Everstone,* 26 M.J. 795 (A.F.C.M.R.1988).

While serving at an overseas installation, unaccompanied by his wife and children, the appellant had an affair with Technical Sergeant (TSgt) J.K. He also supplied drugs to her and used them together with her. All four of these specifications allege that the appellant "did, at or near Lajes Field, Azores, on divers occasions between on or about 15 November 1986 and on or about 30 June 1987" use or distribute the named drug. The stipulation of fact entered into by the parties at trial provides that on a weekly basis during the period alleged, the appellant and TSgt J.K. used cocaine provided by the appellant by snorting it through straws. He provided her with a total of eight grams of cocaine during this period. The appellant also provided liquid Demerol (meperidine) which they used by means of injections given by the appellant to both J.K. and himself. During the period, he provided her a total of 12 cubic centimeters of Demerol.

At trial, the defense contention was that the uses and distributions were contemporaneous, established by the same evidence, and the result of a single impulse because the drugs were used by the appellant at the same time that TSgt J.K. was given drugs and used them. *See United States v. Niedzielski,* 24 M.J. 608 (A.F.C.M.R.1987); *United States v. McKnight,* 19 M.J. 949 (A.F.C.M.R.1984); R.C.M. 1003(c)(1)(C), Discussion. The military judge ruled the offenses were separately punishable. The bases for his ruling were that use and distribution offenses had different elements and involved different societal norms (incapacitating oneself *vis-a-vis* incapacitating others). The military judge ruled correctly. *United States v. Smith,* 14 M.J. 430, 432 (C.M.A.1983); *United States v. Jordan,* 24 M.J. 573, 577 (N.M.C.M.R.1987), *pet. denied,* 25 M.J. 257 (C.M.A. 1987).

We also note that not all of the uses and distributions were contemporaneous. During inquiry into the appellant's pleas of guilty, the following exchanges occurred:

MJ: And would I be correct in understanding that on the occasions that you used it [referring to demerol], or the occasions that you distributed it to ... [TSgt J.K.], you used it yourself?

ACC: On some occasions, and on some occasions not.

\* \* \* \* \* \*

MJ: Let me ask you something. Did the cocaine use and the demerol use take place at the same time? Or did the distributions take place at the same time or was it sometimes?

ACC: Sometimes they were at the same time and other times they weren't.

Transcripts of tape recorded interviews between the appellant and military criminal investigators were introduced into evidence. The appellant makes statements therein that there were occasions when he would provide cocaine or demerol to J.K. and she would use it but he would not. This evidence constitutes an independent basis for finding the specifications in question are separately punishable.

■ We perceive another issue regarding multiplicity which needs to be addressed. It pertains to Specifications 9 and 10 of Charge II wherein the appellant is charged with distributing two different forms of the same drug. Specification 9 alleges that on divers occasions between on or about 15 November 1986 and 30 June 1987 at Lajes Field the appellant wrongfully distributed five milligram tablets of valium (diazepam), a Schedule IV controlled substance. Specification 10 alleges that on divers occasions during the precise same time period and at the same location the appellant distributed injectable (liquid) valium (diazepam). We specified the following issue:

ARE SPECIFICATIONS 9 & 10 OF CHARGE II MULTIPLICIOUS FOR FINDINGS BECAUSE THEY IN-

VOLVE MERELY DIFFERENT FORMS OF THE SAME DRUG ALLEGEDLY DISTRIBUTED?

Having considered the evidence of record and briefs from appellate counsel, we find these two specifications are multiplicious.

Valium (diazepam) is listed as a Schedule IV controlled substance under Title 21 of the United States Code, Section 812(c). *See* 21 C.F.R. sec. 1308.14. The Code of Federal Regulations makes no distinction regarding various forms in which this drug may be produced. In *United States v. Cimoli*, 10 M.J. 516 (A.F.C.M.R.1980), this Court faced a question concerning the providency of the accused's plea of guilty to use of marijuana. The specification in question alleged use of marijuana in the hashish form, whereas the accused told the military judge that the marijuana he had used on that occasion was in the natural form. We found this variance did not affect the validity of the plea, and stated:

> What is proscribed by Article 134 of the Uniform Code of Military Justice, 10 U.S.C. 934 [now covered by Article 112a] is wrongful activity with marijuana. The form of the marijuana is irrelevant for purposes of guilt or innocence, be it embryonic plants, growing plants, dead plants, extracts of dead plants, or even brownies.

10 M.J. at 518 (footnote omitted). *See also United States v. Bolden*, 16 M.J. 722, 726 (A.F.C.M.R.1983); *United States v. Nelson*, 47 C.M.R. 395 (A.F.C.M.R.1973). This rationale is equally applicable to the circumstances of the case now before us. *Cf. United States v. Stephenson*, 25 M.J. 816 (A.F.C.M.R.1988).

Appellate government counsel argue that the record is clear that the distributions of the two forms of valium occurred at different times. We cannot reach that conclusion. All we can glean from the record of trial is that on several unspecified occasions during the charged period the appellant provided valium tablets to TSgt J.K. while they were together in his quarters;

there being a single exception where he gave her some tablets at the base pharmacy. Likewise, on several unspecified occasions during the same period he gave liquid valium to her by injection while they were together at his quarters. The only distinction we discern is the method by which the drug was ingested. We are not inclined to permit multiple charges and the attendant increase in authorized punishment based upon this distinction alone. We find *United States v. Staples*, 19 M.J. 741 (A.F.C.M.R.1984), cited by government counsel in support of their position, to be distinguishable (we ponder, though not decide, whether the outcome in that case would have been the same had the recipient of the drugs transferred been the same rather than two separate individuals). *Staples* dealt with two specific instances of distribution of drugs, not unspecified distributions as a continuing course of conduct as the Government elected to charge in this case.[2]

Government counsel also urge that the reason the Government could separate the valium distributions into two "umbrella specifications" is found in the testimony of the hospital clinic commander. At trial, he testified that liquid valium is used for entirely different medical purposes than oral valium. It can also be inferred from his testimony that the concentration or strength of the drug is much greater in its liquid form. The difficulty with this line of reasoning, as we noted above, is that the two specifications are parts of an indivisible crime as a matter of law. *See Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *United States v. Baker*, 14 M.J. 361, 366 (C.M.A.1983). As we stated in *United States v. Ridgeway*, 19 M.J. 681, 683 (A.F.C.M.R.1984):

> When resolving the issue of whether multiple charges refer to the same offense courts must begin by recognizing that their authority to convict and punish an accused for his conduct derives from the legislature's criminal statute, not

2. We recognize, based upon the state of the evidence, that the Government undoubtedly had, in reality, little choice but to charge the two offenses in question as they did. The misconduct involved had occurred over two years prior to the trial.

from discretionary executive branch decisions.

As the appropriate remedy, we will consolidate the two affected specifications. Specifications 9 and 10 of Charge II are consolidated as Specification 9 of Charge II, to read as follows:

In that MAJOR ARNHEIN T. CUMBEE, United States Air Force, 305th Strategic Clinic, Grissom Air Force Base, Indiana, did, at or near Lajes Field, Azores, on divers occasions between on or about 15 November 1986 and on or about 30 June 1987, wrongfully distribute a total amount of 200 five milligram tablets, more or less, of valium (diazepam) and 20 cubic centimeters, more or less, of injectable valium (diazepam), a Schedule IV controlled substance.

*United States v. Sorrell*, 23 M.J. 122, n. 1 (C.M.A.1986); *United States v. Campbell*, 22 M.J. 99 (C.M.A.1986) (Summary Disposition).

*Convening Orders*

It is asserted that the convening order and the one amendment thereto are defective because neither are signed by the convening authority, nor did the individuals who signed the orders do so "FOR THE COMMANDER." This assertion of error surprises us. The convening authority's signature block appears above and to the right of the signature block and signature of the official who signed the orders at the convening authority's direction. This is precisely the format to be used for court-martial convening orders. *See* Air Force Regulation 10–7, *Administrative Orders*, Figs. 2–8 to 2–10 (15 September 1986). The assertion is totally without merit.

*Sentence Appropriateness*

[3] Our attention has been invited to the appropriateness of the appellant's sentence. It is pointed out that, absent the misconduct which resulted in his court-martial, he has served honorably for over 18 years; that the case revolves around the disarray in his marriage and his seeking solace from that disarray; and, that as the predominant source of support for his two teenage daughters, they will be forced to bear the brunt of the effects of his punishment. Evidence introduced at trial indicates that if dismissed from service, the appellant would lose almost $600,000 in retirement pay if he lived to age 75; and that he has a $19,500 credit card debt. He did have a very credible service record absent these offenses. His last performance report was favorably endorsed by his numbered Air Force commander, a lieutenant general.

An accused may be punished only for offenses of which he has been found guilty. The appellant faced a maximum punishment which included 88 years confinement. Our action consolidating the two specifications involving distribution of valium reduces that figure to 78 years. Considering our consolidation action and all other matters of record, we conclude that further sentence relief is appropriate. Only so much of the sentence is affirmed as provides for dismissal, confinement for seven years, and forfeiture of $1,500.00 pay per month for 84 months. *See generally United States v. Kinman*, 25 M.J. 99 (C.M.A.1987); *United States v. Tucker*, 29 M.J. 915 (A.C.M.R.1989).

The findings of guilty and the sentence, both as modified, are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge KASTL and Judge MURDOCK concur.